UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLEN DEAN MAMMEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:10-CV-2028-G |
| RICHARD (BO) HOAG, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the third-party defendant, Margarita Mammel ("Margarita"), to dismiss the third-party complaint filed by Richard Bo Hoag ("Hoag") and Gateway Hook Company, LLC ("Gateway") (docket entry 14). For the reasons set forth below, the motion is denied.

## I. BACKGROUND

On July 13, 2004, Allen Dean Mammel ("Dean") obtained a patent on his "No-Tie Fishing System and Method," Patent No. 6,760,997 ("the '997 patent"). Defendants' Original Answer, Counterclaims, and Third Party Complaint ("Third-Party Complaint") ¶ 8 (docket entry 9). In February of 2009, Dean and Hoag began

discussing the possibility of commercializing Dean's "No-Tie" fishing system. *Id.* ¶ 12. Hoag later formed Gateway to facilitate the commercialization, *id.* ¶ 11, and Dean orally agreed to transfer all of his intellectual property rights in the "No-Tie" fishing system to Hoag in exchange for a share of revenues in Gateway. *Id.* ¶ 13. At that time, Dean identified only the '997 patent as necessary for the deal. *Id.*

Hoag, as the president of Gateway, *id.* ¶ 11, spent the next year preparing for the commercialization of the "No-Tie" fishing system. *Id.* ¶ 15. He attended trade shows, conducted product, manufacturing, and marketing research, investigated advertising and website development, and sought to develop customer accounts and sales plans. *Id.* Hoag and Dean met multiple times each month to discuss the project's progress, and twice traveled together to meet with the subcontractor responsible for manufacturing the hooks to be used with the system. *Id.* ¶ 16.

In early 2010, Hoag requested that Dean execute a written agreement memorializing their oral agreement to transfer the intellectual property rights, which Hoag believed at the time to be the '997 patent only. *Id.* ¶ 17. More than a week later, Hoag was contacted by Dean and his wife Margarita's lawyers demanding $90,000 in exchange for transfer of the '997 patent. *Id.* ¶¶ 17-19. On March 24, 2010, Dean executed an agreement transferring the '997 patent to Gateway. *Id.* ¶ 20.

On April 16, 2010, Gateway received a letter from Dean and Margarita's lawyers identifying another patent owned by Dean, Patent No. 5,970,650 ("the '650


patent"), entitled "No Thread Fishing Equipment," as necessary to commercialize the "No-Tie" fishing system. *Id.* ¶ 21; Plaintiff's Complaint for Patent Infringement ("Complaint") ¶ 6 (docket entry 1). Hoag claims that he had no knowledge of the '650 patent or its relevance to the "No-Tie" fishing system prior to receiving notice from Dean and Margarita's lawyers. Third-Party Complaint ¶ 22.

On October 7, 2010, Dean initiated this suit against Hoag and Gateway for infringement of the '650 patent. *See generally* Complaint. Hoag and Gateway (collectively, the "third-party plaintiffs") impleaded Margarita, alleging that she tortiously interfered with Dean and Hoag's oral agreement regarding transfer of all of the rights necessary to commercialize the "No-Tie" fishing system. Third-Party Complaint ¶¶ 70-73. Pursuant to Rules 14 and 12(b)(1) of the Federal Rules of Civil Procedure, Margarita now moves to dismiss. *See generally* Third Party Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rules 12(b)(1), 14 and 28 USCA 1367 and Memorandum in Support Thereof ("Motion to Dismiss") (docket entry 14).

## II. ANALYSIS

Rule 14 permits defendants, as third-party plaintiffs, to bring into a civil suit any "nonparty who is or may be liable to [them] for all or part of the claim against [them]." FED. R. CIV. P. 14(a)(1). "Rule 14's 'is or may be liable' language makes it clear that third-party practice is proper even though a third-party defendant's liability

is not automatically established upon resolution of the third-party plaintiff's liability to the original plaintiff." *Baylor University Medical Center v. Epoch Group, L.C.*, No. 3:03-CV-2392-G, 2005 WL 2124126, at *4 (N.D. Tex. Sept. 1, 2005) (Fish, C.J.) (citing 6 Wright & Miller § 1446 at 373); see also *Travelers Insurance Company v. Busy Electric Company*, 294 F.2d 139, 145 (5th Cir. 1961). Recovery against the third-party defendant need not be a certainty; "the complaint should be allowed to stand if, under some construction of the facts which might be adduced at trial, recovery would be possible." *Wilkie v. United States*, 279 F. Supp. 671, 673 (N.D. Tex. 1968) (Estes, C.J.) (internal quotation marks omitted). As a consequence, "challenges to a court's subject matter jurisdiction over third-party claims will generally be unsuccessful. . . ." *Baylor*, 2005 WL 2124126, at *3.

In the case *sub judice*, the third-party plaintiffs have impleaded Margarita for tortious interference with a contract. Third-Party Complaint ¶¶ 70-73. They argue that Margarita's tortious conduct makes her secondarily liable for any damages they suffer as a consequence of Dean's failure to perform under the agreement, including damages assessed against them in the present patent-infringement action. Gateway Hook's Opposition to Margarita Mammel's Motion to Dismiss Third Party Complaint ("Response") at 5 (docket entry 17). The court agrees.

In *Baylor*, a case involving the "traditional use of third-party practice: derivative liability," the third-party plaintiff, Epoch, impleaded the third-party defendant, Van,


in order "to shield itself . . . by virtue of an Administration Agreement" from liability arising out of Baylor University Medical Center's claims for breach of contract and late payment of claims. *Baylor*, 2005 WL 2124126, at *1, 4. Under the agreement, Epoch served as Van's "Claims Supervisor," and was responsible for paying Baylor if the services it provided were covered under Van's benefit plan. *Id.* at *4. Van then paid for claims processed by Epoch. *Id.* Finding Van's liability to Epoch to be derivative of Epoch's liability to Baylor, this court upheld Epoch's third-party claim as proper. *Id.*

Here, Margarita's liability is similarly derivative of any liability that the third-party plaintiffs may have to Dean. Under federal patent law, "whoever *without authority* makes, uses, offers to sell, or sells any patent invention . . . infringes the patent." 35 U.S.C. § 271(a) (emphasis added). As an affirmative defense to Dean's patent-infringement claim, Hoag and Gateway assert that their use of the '650 patent was authorized by Dean and Hoag's oral agreement. Third-Party Complaint ¶ G. And they claim that Margarita tortiously interfered with that agreement. *Id.* ¶ 71.

In Texas, the basic measure of actual damages for tortious interference with a contract is to put the aggrieved parties in the same position they would have occupied but for the tortious interference, *American National Petroleum Company v. Transcontinental Gas Pipe Line*, 798 S.W.2d 274, 278 (Tex. 1990), and "[t]he unenforceability of a contract is no defense . . . ." *Clements v. Withers,* 437 S.W.2d

818, 821 (Tex. 1969). If Margarita tortiously interfered with Dean and Hoag's oral agreement to transfer the "No-Tie" fishing system's intellectual property rights, she may be required "to put the [third-party plaintiffs] in the same economic position [they] would have been in had the contract interfered with been actually performed." *American National*, 798 S.W.2d at 278. The third-party plaintiffs are "attempt[ing] to pass on to [Margarita] all or part of the liability asserted against" them. See *Baylor*, 2005 WL 2124126, at *4. Because Margarita might be liable to the third-party plaintiffs for tortiously interfering with the contract that they claim authorized their use of the '650 patent, the court finds the third-party plaintiffs' impleader is proper, and Margarita's motion to dismiss for improper impleader is denied.

Margarita also urges the court, in the alternative, to dismiss the third-party complaint under 28 U.S.C. § 1367(a), or decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(2). Motion to Dismiss at 3-5. The court is not persuaded.

Rule 12(b)(1) authorizes dismissal of a case for lack of jurisdiction over the subject matter.* FED. R. CIV. P. 12(b)(1). Title 28, Section 1367(a) of the United

---

\*      On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176

(continued...)

States Code grants district courts "supplemental jurisdiction" over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . .." 28 U.S.C. § 1367(a). These claims, however, "must derive from a common nucleus of operative fact," *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966), and a court may "decline to exercise supplemental jurisdiction . . . if . . . the [state] claim substantially predominates over the [federal] claim . . .." 28 U.S.C. § 1367(c)(2); *U.S. Bank, N.A., v. City of Irving*, 3:06-CV-1805-G, 2007 WL 1073769, at *4 (N.D. Tex. April 5, 2007) (Fish, C.J.). "If it appears that state issues substantially predominate, whether in terms of proof, of scope of issues raised, or of comprehensiveness of remedy sought, the state claims may be dismissed." *Gibbs*, 383 U.S. at 726.

As previously discussed, the third-party plaintiffs' claim against Margarita arises out of her alleged tortious interference with Dean and Hoag's oral agreement. Third-Party Complaint ¶¶ 70-73. Dean's claim against Hoag and Gateway is predicated on a lack of such agreement. Complaint ¶¶ 6-8. To resolve the patent-infringement claim, the trier of fact must determine whether Dean and Hoag entered into an agreement authorizing the third-party plaintiffs' use of the '650 patent. 35 U.S.C. § 271(a). If such an agreement is found, the fact finder must then decide

---

*(...continued)
(5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

whether Dean breached, an inquiry not too remote from its corollary: whether Dean's breach was caused by Margarita's willful and intentional conduct.  See *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 664 (Tex. 1990) (identifying the elements of tortious interference with a contract as:  (1) a contract; (2) willful and intentional interference; (3) proximate causation; and (4) actual damages).  Damages under Dean's and the third-party plaintiffs' respective claims should be identical because a finding of tortious interference would require Margarita "to put the [third-party plaintiffs] in the same economic position [they] would have been in had the contract interfered with been actually performed," -- that is, as if the third-party plaintiffs were authorized to use the '650 patent.  See *American National*, 798 S.W.2d at 278.  The nucleus of operative facts is the same across both claims.  See *The Equitable Life Assurance Society of the United States v. Lafferty*, No. 3:02-CV-2453-D, 2003 WL 22946473, at *2 (N.D. Tex. Feb. 11, 2003) (Fitzwater, J.) ("Because the liability of the third-party defendant to the defendant on the impleader claim is derivative of the defendant's underlying liability to the plaintiff in the underlying case, the impleader claim by definition is concerned with the same transaction or occurrence, or common nucleus of operative fact, as the underlying suit.").  And because Margarita's liability is contingent on the third-party plaintiffs' liability to Dean, the tortious interference claim is not independent of, and does not substantially predominate over, the patent-infringement claim.  See *Baylor,* 2005 WL

2124126, at *4 (finding claims are not entirely independent, and the state claim does not predominate); see also *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 428 (E.D. La. 2010) (exercising supplemental jurisdiction where claims "involve substantially the same facts and evidence," and the "claims are sufficiently intertwined so that one does not predominate over the other").

Both Dean's patent-infringement claim and the third-party plaintiffs' tortious interference claim involve significantly overlapping facts and evidence, and the latter claim does not predominate in terms of proof, scope, or remedy. *Gibbs*, 383 U.S. at 726. The "justification [for supplemental jurisdiction] lies in considerations of judicial economy, convenience and fairness to litigants," *id.*, and, on the record, the court finds that exercising supplemental jurisdiction here would promote judicial economy and fairness for all parties involved by not requiring the third-party plaintiffs to prosecute their claim in a separate trial involving substantially the same facts, parties, and witnesses. Declining jurisdiction, on the other hand, would present "a significant risk that [Margarita] will attempt to re-litigate in state court rulings . . . by the district court," *Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 603 (5th Cir.), *cert. denied*, __ U.S. __, 129 S. Ct. 2865 (2009), because Dean and Hoag's alleged contract for commercialization of the "No-Tie" fishing system is central to both Dean's patent-infringement claim against the third-party plaintiffs and the third-party plaintiff's tortious-interference claim against Margarita. The

claims "are sufficiently intertwined so that one does not predominate over the other," *Lang*, 735 F. Supp. 2d at 428 (internal quotation marks omitted), which suggests that the court should exercise supplemental jurisdiction over the third-party plaintiffs' claim. The third-party plaintiffs may therefore proceed with their claim against Margarita for tortious interference with a contract; Margarita's request that the court decline supplemental jurisdiction is denied.

### III.  CONCLUSION

For the above-stated reasons, Margarita's motion to dismiss the third-party complaint is **DENIED**.

**SO ORDERED**.

August 18, 2011.

*[signature: C. Joe Fish]*

**A. JOE FISH**
**Senior United States District Judge**